Present:   Chief Judge Decker, Judges Humphreys, Petty, Beales, Huff, O'Brien, Russell, AtLee, Malveaux and Athey
Argued by teleconference

**PUBLISHED**

QUARTREZ LOGAN, S/K/A
  QUARTREZ RASHAD LOGAN

                                                            OPINION BY
v.        Record No. 1735-18-1             JUDGE ROBERT J. HUMPHREYS
                                                            JULY 21, 2020
COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
David W. Lannetti, Judge

J. Barry McCracken, Assistant Public Defender, for appellant.

Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Following a bench trial, appellant Quartrez Rashad Logan ("Logan") was convicted of

attempting to purchase a firearm while subject to a protective order, in violation of Code

§ 18.2-27, by the Circuit Court of the City of Norfolk ("circuit court").  On appeal, a divided

panel of this Court affirmed the conviction.  Logan v. Commonwealth, 71 Va. App. 568 (2020).

We subsequently granted Logan's petition for rehearing *en banc*, stayed the mandate of

the panel decision, and reinstated the appeal on the docket of this Court.  The sole issue on

appeal in this case is whether a return of service on a protective order is subject to the application

of the Confrontation Clause of the Sixth Amendment to the Constitution of the United States.

I.  BACKGROUND

In the light most favorable to the Commonwealth as the party that prevailed below, the

evidence pertinent to this issue was as follows:

On July 24, 2017, the General District Court for the City of Hampton granted Shelia Chawlk's ("Chawlk") request to extend a preliminary protective order against Logan to January 24, 2018. Logan did not appear before the Hampton GDC for the extension hearing, and the protective order was extended. The next day, July 25, 2017, a sheriff's deputy filed a return of service on the protective order indicating that he had personally served both Logan and Chawlk with a copy of the preliminary protective order extension and subpoenas for their appearance at a full hearing scheduled for January 24, 2018. The reverse side of the order contained a "Returns" section, indicating that Logan was personally served on July 25, 2017 at 8:20 a.m. with the serving deputy's name and signature.

On July 31, 2017, Logan attempted to purchase two firearms from Superior Pawn & Gun in Norfolk. The store clerk asked Logan to fill out two forms, an "SP65" and "ATF 4473," required by state and federal law respectively, before Logan could complete the firearms purchase. Both forms ask the purchaser to indicate whether he or she is subject to a protective order or restraining order. Both forms also ask whether the purchaser has been convicted of a felony. Logan completed both forms in the presence of the store clerk and indicated on both that he was not subject to a protective order.

On August 1, 2017, Senior Trooper M.S. Walden ("Trooper Walden") of the Virginia State Police ("VSP") received the forms, and the VSP refused to authorize the firearms purchase. Trooper Walden scheduled an initial meeting with Logan on September 18, 2017, but Logan did not appear. Logan told Trooper Walden that he forgot about the meeting and asked if their meeting "could wait until after the 27th [of September] because [Logan had] court on a protective order."

Trooper Walden and Logan finally met on October 3, 2017. Trooper Walden showed Logan the SP65 and ATF 4473 forms and confirmed that Logan signed both forms. Trooper

Walden then showed Logan the preliminary protective order extension and asked whether Logan remembered it. Logan responded that he knew he was subject to a protective order, but thought the order only lasted two days and had expired by the time he attempted to purchase the firearms. Trooper Walden showed Logan the return of service indicating that Logan was personally served with the protective order extension. Logan responded that he "never knew she went back and had it extended," and claimed he never received personal service.[1]

A grand jury subsequently indicted Logan for making a false statement on a criminal history consent form to obtain a firearm, a felony, in violation of Code § 18.2-308:2, and he was also charged with attempting to purchase a firearm while subject to a protective order, a misdemeanor, in violation of Code § 18.2-27.

At the bench trial on October 11, 2018, the Commonwealth attempted to introduce a certified copy of the extended protective order into evidence. Logan objected to its admission, arguing that the return of service portion of the order, which indicated that Logan was personally served with the protective order by a deputy sheriff on July 25, 2017 at 8:20 a.m., contained testimonial hearsay and its admission violated Logan's right to confrontation under the Sixth Amendment. Specifically, Logan argued that "information contained within the document is hearsay and [Logan] ha[d] the right to confront [the sheriff's deputy] that created that particular content." The Commonwealth argued that, as "an official order of the Court," the protective order is "the same as a Court order." The circuit court overruled Logan's objection and admitted the preliminary protective order as a "valid court record."

The circuit court found Logan guilty of misdemeanor attempt to purchase a firearm while subject to a protective order, in violation of Code § 18.2-27, and not guilty of the felony charge.

---

[1] Whether Logan actually received personal service is not before us, as he did not appeal the circuit court's factual findings in that regard.

The circuit court sentenced Logan to six months' imprisonment, with three months suspended. This appeal follows.

## II. ANALYSIS

### A. Standard of Review

"Although we will not disturb on appeal decisions regarding the admissibility of evidence absent an abuse of the [circuit] court's discretion, we review *de novo* [the constitutional question of] whether a particular category of proffered evidence is testimonial hearsay." Cody v. Commonwealth, 68 Va. App. 638, 658 (2018) (quoting Holloman v. Commonwealth, 65 Va. App. 147, 170 (2015)).

### B. The Application of the Confrontation Clause

The Confrontation Clause of "[t]he Sixth Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment, . . . provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" Melendez-Diaz v. Massachusetts, 557 U.S. 305, 309 (2009) (some alterations in original) (internal citation omitted). Within the meaning of the Confrontation Clause, "witnesses" means "those who 'bear testimony,'" or "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." Crawford v. Washington, 541 U.S. 36, 51 (2004) (alteration in original) (citation omitted). Thus, the Confrontation Clause prohibits the introduction of "testimonial" statements by a witness who does not testify at trial, unless the witness is "unavailable to testify, and the defendant . . . had a prior opportunity for cross-examination." Id. at 54.

"Given our dual obligations to decide cases on the 'narrowest and best grounds' coupled with that to avoid deciding constitutional issues if possible, . . . the first step in any Confrontation Clause analysis involves determining whether the statements in question are subject to

constitutional protection under the Sixth Amendment." Cody, 68 Va. App. at 657-58. The Commonwealth does not assert that the serving deputy was unavailable to testify or that Logan had a prior opportunity to cross-examine him, so the only question before us is whether the statements in the return of service on a protective order are "testimonial" as that term is understood in constitutional parlance.

"[T]he principal evil at which the [Confrontation] Clause was directed was the civil-law mode of criminal procedure, particularly the use of *ex parte examinations* as evidence against the accused." Crawford, 541 U.S. at 50 (emphasis added). The focus of post-Crawford jurisprudence has primarily been on statements made in various forms, and under equally various conditions, in an effort to distinguish those that constitute "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact" *primarily* for use in a criminal prosecution, from those that do not so qualify.[2] Id. at 51 (alteration in original).

A statement qualifies as testimonial if the "primary purpose" of the statement was to "creat[e] an out-of-court substitute for trial testimony." Michigan v. Bryant, 562 U.S. 344, 369 (2011). Essentially, testimonial statements are those that "are functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.'" Melendez-Diaz, 557 U.S. at 310-11 (quoting Davis v. Washington, 547 U.S. 813, 830 (2006)).

_____

[2] Various formulations of this core class of "testimonial" statements exist: "*ex parte* in-court testimony or its functional equivalent— that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially;" "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions;" [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

Crawford, 541 U.S. at 51-52 (internal citations omitted).

- 5 -

"[A] statement cannot fall within the Confrontation Clause unless its *primary* purpose was testimonial." Cody, 68 Va. App. at 658 (alteration in original) (quoting Ohio v. Clark, 576 U.S. 237, 245 (2015)).

In determining the "primary purpose" of a statement, courts must consider "all of the relevant circumstances," and determine the objective purpose of the statement at the time it was made—not the statement's possible availability for use at a later trial. Bryant, 562 U.S. at 358, 369. "[T]he relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." Id. at 360. Where the primary purpose of a statement was not to create an out-of-court substitute for trial testimony, the Confrontation Clause is satisfied and "the admissibility of [that] statement is the concern of state and federal rules of evidence." Id. at 359. As the Supreme Court put it more succinctly, "[i]n the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the [statement] was to 'creat[e] an out-of-court substitute for trial testimony.'" Clark, 576 U.S. at 245 (some alterations in original).

If the primary purpose of the statement on the return of service was *not* for use in an investigation or prosecution of a crime, then the Confrontation Clause plays no role in its admissibility. See id. at 244. Therefore, we must determine the primary purpose of a return of service on a protective order entered pursuant to Code § 19.2-152.9.

Generally, where the primary purpose of preparing and maintaining a document is for government administrative purposes, rather than prosecutorial purposes, the document is not testimonial. See Adjei v. Commonwealth, 63 Va. App. 727, 746-47 (2014) (holding that certain documents prepared by the United States Citizen and Immigration Services were not testimonial

because the preparation and maintenance of those documents were necessary to the agency's administrative and adjudicatory functions); <u>Boone v. Commonwealth</u>, 63 Va. App. 383, 390-91 (2014) (holding that Department of Motor Vehicles transcript to prove habitual offender status was not testimonial because the transcript was a recitation of information maintained by the agency for the purpose of administering the Motor Vehicle Code).

Here, Logan was convicted under Code § 18.2-27, which criminalizes an attempt to purchase a firearm while subject to a protective order, as a misdemeanor, in violation of Code § 18.2-308.1:4.[3]  This statute requires the Commonwealth to prove that the defendant:  (1) was subject to a protective order entered pursuant to certain code sections, including Code § 19.2-152.9, or similar orders issued in another state or territory;[4] and (2) attempted to purchase or transport a firearm while the protective order was in effect.  Code § 18.2-308.1:4(A).  The Commonwealth sought to introduce a facially valid certified copy of the protective order, which included a return of personal service on Logan, and evidence that Logan attempted to purchase two firearms while the protective order was in effect.

Personal service of a protective order is not an element of Code § 18.2-308.1:4 the Commonwealth was required to prove beyond a reasonable doubt—the issue here is actually over the *admissibility* of the protective order as evidence in support of the fact that Logan had

---

[3] The circuit court's sentencing order only lists Code § 18.2-27, misdemeanor attempt, as the misdemeanor with which Logan was charged.  However, from the arrest warrant, arraignment, and the Commonwealth's evidence, we infer that the misdemeanor Logan was charged with attempting was purchasing a firearm while subject to a protective order, in violation of Code § 18.2-308.1:4.

[4] In the abstract, the Commonwealth's submission of a facially valid protective order would be *prima facie* evidence of the order's validity.  Because we presume regularity with respect to court orders, the burden of persuasion would then shift to Logan to rebut the presumption of regularity by establishing that he was not served with the protective order or that it was otherwise invalid.  However, because this issue was not raised by the parties, we do not address it.

lied about its existence and being served with it.  Since the protective order is not valid unless personally served, the question before us is whether the circuit court abused its discretion in admitting the protective order in the absence of the opportunity by Logan to cross-examine the deputy sheriff.  Logan and the dissent take the position that because Code § 19.2-152.9(C) states that "[t]he preliminary order is effective upon personal service on the alleged perpetrator," the return showing personal service on Logan must be testimonial since it establishes the validity of the order, and therefore is subject to the requirements of the Sixth Amendment.

The logical first step in determining the primary purpose of a statutorily-imposed requirement is to look at the text of the statute itself, and in this case, the General Assembly has clearly expressed it.  The issuance of a protective order is an *ex parte* civil proceeding, and the explicit policy behind such an order is "*to protect the health and safety of the petitioner and family or household members of a petitioner*."  Code § 19.2-152.9(A) (emphasis added).

Given that non-prosecutorial purpose and the civil nature of the proceedings, we conclude that the statement in the return of service, indicating that Logan was personally served, was a recordation of the completion of a ministerial duty on the part of the deputy sheriff.  Code § 8.01-296 delineates the specific methods by which service of process can be effectuated. Pertinent to our analysis, the deputy sheriff here had no discretion in the performance of a statutory duty since the only method acceptable for service of a protective order is "[b]y delivering a copy thereof in writing to the party in person."  Code § 8.01-296(1).  After doing so "[t]he person executing such service shall note the manner and the date of such service on the original and the copy of the process so delivered or posted under this subdivision and shall effect the return of process."  Code § 8.01-296(2)(c).  Furthermore, "[n]o return shall be conclusive proof as to service of process. *The return of a sheriff shall be* prima facie *evidence of the facts therein stated*."  Code § 8.01-326 (emphasis added).

Effecting a ministerial duty is not the functional equivalent of live testimony nor is a record of service of process "evidence against" anyone as the framers understood the Confrontation Clause's mandate. Simply because the return of service *might* be relevant in a future prosecution does not make it testimonial.[5] See Sanders v. Commonwealth, 282 Va. 154, 164-65 (2011) (holding that medical reports created for treatment purposes are nontestimonial, despite circumstances objectively indicating the documents could be used for later criminal prosecution); Cody, 68 Va. App. at 662 (holding that statements made to obtain medical treatment were not testimonial, though they could be used for later prosecution).

Here, the return of service was created and filed with the court to serve purely administrative and statutory purposes, and would have been created regardless of whether Logan

_____

[5] The dissent's reliance on Melendez-Diaz to suggest otherwise is misplaced. In Melendez-Diaz, the Supreme Court applied the Confrontation Clause to documents and held that sworn certificates prepared to show the results of a forensic analysis of seized substances were testimonial. 557 U.S. at 305. The Court explained that the certificates at issue were testimonial because they were made for the primary purpose of proving a fact at trial that was the equivalent of a direct examination by a fact witness who was not subject to cross-examination: (1) they were sworn affidavits, containing "the precise testimony the analysts would be expected to provide if called at trial," and were "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination;'" (2) they were prepared in response to an investigative law enforcement request; and (3) the "sole purpose" of creating the certificates, pursuant to the Massachusetts statute that required their production, was to provide *prima facie* evidence in a criminal proceeding. Id. at 310-11, 317 (citations omitted). Thus, Melendez-Diaz clarified that "[a] document created *solely for an 'evidentiary purpose,'* . . . *made in aid of a police investigation*, ranks as testimonial." Bullcoming v. New Mexico, 564 U.S. 647, 664 (2011) (emphasis added) (citing Melendez-Diaz, 557 U.S. at 311).

Similarly, the dissent's reliance on our Supreme Court's decision in Crawford v. Commonwealth, 281 Va. 84, 98-99 (2011), is equally misplaced. Unlike that case, the return of service here was not a sworn affidavit containing the "precise testimony" the serving deputy would be expected to provide if called at trial, and is thus not the functional equivalent of live, in-court testimony. See Melendez-Diaz, 557 U.S. at 311-12. A return of service does not fall within the "core class of 'testimonial' statements unlike an affidavit." See Crawford, 541 U.S. at 51. Applying these principles, the Virginia Supreme Court held that an affidavit offered in support of a preliminary protective order was testimonial in nature because the statements in the affidavit "described past events that had taken place days, weeks, and even months previously— the very purpose of which was to 'establish or prove past events potentially relevant to later criminal prosecution.'" Crawford, 281 Va. at 98-99 (quoting Davis, 547 U.S. at 822).

- 9 -

ever subsequently violated the order or made material misrepresentations about its existence on unrelated forms.[6]  Thus, taking into account all the surrounding circumstances, it is objectively reasonable to conclude that the return of service primarily served as a contemporaneous recordation of the completion of a ministerial duty, not the functional equivalent to what Justice Scalia referred to in Crawford as an "*ex parte* examination as evidence" against Logan.[7]  See Crawford, 541 U.S. at 50.  Although the return of service certainly *could* be relevant in a later criminal prosecution if, as here, the validity of a protective order was in issue, the fact remains that the primary purpose of the return of service at the time of its creation was not in contemplation of future prosecution, but rather an administrative and purely ministerial duty imposed by a civil statute.

Additionally, regarding the dissent's analysis, even assuming the return of service in this case was testimonial in nature, that would not be dispositive of whether Logan had a right to confront the deputy sheriff who made it.  As the Supreme Court has noted, "that does not mean that the Confrontation Clause bars every statement that satisfies the 'primary purpose' test.  We have recognized that the Confrontation Clause does not prohibit the introduction of out-of-court statements that would have been admissible in a criminal case at the time of the founding."  Clark, 576 U.S. at 246.

---

[6] The Supreme Court has noted that business and public records generally do not raise confrontation concerns, "not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial."  Bullcoming, 564 U.S. at 324.

[7] Similarly, several of our sister courts have determined that a return of service is not a testimonial statement and we have found none which reached a contrary conclusion.  See, e.g., United States v. Fryberg, 854 F.3d 1126 (9th Cir. 2017); State v. Shivers, 280 P.3d 635 (Ariz. Ct. App. 2012); People v. Saffold, 26 Cal. Rptr. 3d 190 (Cal. Ct. App. 2005); Gaines v. State, 999 N.E.2d 999 (Ind. App. 2013); Commonwealth v. Shangkuan, 943 N.E.2d 466 (Mass. App. Ct. 2011); State v. Copeland, 306 P.3d 610 (Or. 2013) (*en banc*) (state statute required personal service of restraining order); State v. Velykoretskykh, 343 P.3d 272 (Or. Ct. App. 2015).

Such is the case with respect to personal service of process since historically *notice* of a court order or pleading was not considered the functional equivalent of an *accusation* against a criminal defendant. "Originally at common law the only effective service of process was physical delivery to [a] defendant." W. Hamilton Bryson, Service of Process in Virginia, 5 Va. B. Ass'n J. 16, 17 (Spring, 1979); see also 3 William Blackstone, Commentaries *213, *213 ("[P]rocess, as we are now to consider it, is the method taken by the law to compel a compliance with the original writ, of which the primary step is by giving the party notice to obey it. This notice is . . . given to the defendant by two of the sheriff's messengers called summoners, either in person or left at his house or land."). Thus, at the time of the founding, the framers of the Sixth Amendment did not contemplate that service of process was the sort of hearsay evidence that logically ought to be subject to the right of confrontation.

### III. CONCLUSION

In summary, although potentially relevant in a later prosecution, the return of service of the protective order on Logan was not functionally identical to live, in-court testimony against him. We therefore hold that the Sixth Amendment did not require that the Commonwealth provide Logan with the opportunity to cross-examine the deputy sheriff who served it and the circuit court did not violate Logan's constitutional right to confrontation in admitting it.

For these reasons, the judgment of the circuit court is affirmed.

Affirmed.

Athey, J., with whom Beales, J., joins, concurring in part, and concurring in the judgment affirming the conviction.

I concur in the plurality opinion to the extent that it uses the primary purpose test developed out of Crawford v. Washington, 541 U.S. 36 (2004); further expanded upon in Michigan v. Bryant, 562 U.S. 344 (2011); and clarified and expanded in Ohio v. Clark, 576 U.S. 237 (2015), which most recently held that "in the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' . . . was to create an out-of-court substitute for trial testimony." Clark, 576 U.S. at 245 (quoting Michigan v. Bryant, 562 U.S. 344, 358 (2011)). I write separately, in part, to address the application of the test discussed by Justice Alito in the majority opinion in the 2015 Clark decision, which governs this case.

Neither the plurality nor the dissent, in my judgment, correctly applies the Supreme Court's two-pronged test in Clark. In Clark, Justice Alito (writing the majority opinion for the Supreme Court) established a two-pronged test for courts to apply in determining whether statements are subject to the Confrontation Clause of the Sixth Amendment. The test's first prong is for the court to determine whether the statement at issue is testimonial. The Court made clear in Clark that the primary purpose test is to be used in making this determination of whether any hearsay at issue is testimonial. See id. ("Thus, under our precedents, a statement *cannot fall within the Confrontation Clause* unless its primary purpose was testimonial." (emphasis added)). The second prong, to be applied when the statement at issue is then actually found to be testimonial, is whether the statement is subject to the Confrontation Clause or still "would have been admissible in a criminal case at the time of the founding." Id. at 246. "Thus, the primary purpose test is a necessary, but not always sufficient, condition for the exclusion of out-of-court statements under the Confrontation Clause." Id.

In the case now before us, the plurality correctly applies the primary purpose test and concludes that the statement at issue (the return of service) is not testimonial. Given that the

- 12 -

plurality opinion determines that the return of service is nontestimonial, the question of whether the Confrontation Clause applies is resolved under the test set out in Ohio v. Clark. Therefore, that is where the plurality's discussion under Clark should end. Since the return of service was found to be nontestimonial, it is unnecessary for the plurality, in addressing the dissent, to reach the second prong of the test, and by doing so, the plurality's opinion borders on being an advisory opinion at that point. I therefore do not join in that part of the plurality's analysis as our mandate is to decide cases on the "narrowest and best grounds," and the plurality should have left for another day the additional, unneeded analysis of what might happen if it had found the return of the service of process to be testimonial. Cody, 68 Va. App. at 657. In short, it is not necessary for our decision today to go to the second prong of the test in Ohio v. Clark once it is determined that the primary purpose of the return of service was not such that it would be testimonial.

Conversely, the dissent concludes that the deputy's statement in the return of service is indeed testimonial but fails to apply the second prong from Clark to determine whether the statement in the return of service actually still requires the protections the founders contemplated when drafting the Confrontation Clause.

I also write separately because I disagree with the plurality, which provides no authority for its assertion that the Commonwealth did not have to prove that Logan was actually served with the protective order to convict him under Code § 18.2-308.1:4.[8] Code § 19.2-152.9(C) states that "[t]he preliminary order is effective upon personal service on the alleged perpetrator."

_____

[8] The fact finder's determination that Logan did, in fact, receive personal service is not before us as he did not appeal that determination. However, the dissent conflates the actual assignment of error, whether the return of service is testimonial and thus implicates the Confrontation Clause, with the factual determination not on appeal that Logan actually received personal service of process.

- 13 -

We have previously held, in similar cases, that DMV administrative records, admitted into evidence as proof of notice, are nontestimonial and not subject to the Confrontation Clause. Violation of the Code, in those instances, was predicated on the notion that in order to convict an individual for driving on a suspended license, he must actually have received notice that his license was suspended at the time he chose to drive the vehicle. See Carew v. Commonwealth, 62 Va. App. 574, 578 (2013) (holding that a driver's license is not suspended until the driver receives notice of that suspension). Similarly, here, a defendant, pursuant to Code § 19.2-152.9(C), must have actual notice of the protective order, by service of process triggering the protective order's validity, before he can be in violation of Code § 18.2-308.1:4.

The dissent interprets the requirement to prove service of process on the subject of the protective order as absolutely determining that the return of service is testimonial. Although I disagree with the plurality and agree with the dissent that the Commonwealth must prove a defendant actually received prior service of process,[9] whether a statement contributes to proving an element of a crime does not inherently make that statement (or the return of service in this case) testimonial. The initial determination applied to any *ex parte* statement when the Confrontation Clause is implicated is whether, in light of all the circumstances, viewed objectively, the primary purpose of the statement was to create an out-of-court substitute for trial testimony. See Clark, 576 U.S. at 245. The fact that the return of the service of process in this case assists in proving an element of the crime is merely one of many circumstances to be objectively considered by this Court in determining the primary purpose of the return of process.

_____

[9] As the plurality correctly notes, "The return of a sheriff shall be *prima facie* evidence of the facts therein stated." Code § 8.01-326. While this must be proven by the Commonwealth to show the validity of the protective order, the burden is then shifted to the defendant to establish that he was not actually served with process and as noted above, that factual determination is not before this Court.

- 14 -

I agree with the plurality that the primary purpose for a deputy sheriff's filling out and filing a return of service is compliance with Code § 8.01-296. The purpose for this statutorily mandated requirement of serving a protective order and recording the completion of his task was eloquently stated in Commonwealth v. Shangkuan, 943 N.E.2d 466, 472 (Mass. App. Ct. 2011),

> [T]he primary purpose for which the return of service in this case was created is to serve the routine administrative functions of the court system, ensuring that the defendant received the fair notice to which he is statutorily and constitutionally entitled, establishing a time and manner of notice for purposes of determining when the order expires or is subject to renewal, and assuring the plaintiff that the target of the order knows of its existence. The return of service here was not created for the purpose of establishing or proving some fact at a potential future criminal trial.

Although a return of service could theoretically be relevant to some future possible prosecution if the target of the protective order violates the order, or in this case attempts to purchase a firearm while subject to the protective order, the primary purpose of a deputy sheriff's serving a protective order and filing a return of service with the court is merely administrative and ministerial.

For all of these reasons, I concur in the judgment of the plurality opinion that the return of service of process is nontestimonial and that the Confrontation Clause is therefore not implicated in this case. Consequently, I would also affirm Logan's conviction by the trial court.

Huff, J., with whom Russell and AtLee, JJ. join, dissenting.

I respectfully dissent because appellant was deprived of his constitutional right of confrontation of the deputy sheriff who asserted (by unsworn affidavit) that appellant had been served with the preliminary protective order. Without that evidence, appellant could not have been convicted because a preliminary protective order is without effect unless and until personal service has been established. Code § 19.2-152.9(C).

Asserting a constitutional right to confront the absent witness who claims to have effectuated personal service of a preliminary protective order issued pursuant to Code § 19.2-152.9 is not an attack on the trial court's order. Likewise, it does not call into question the purpose of preliminary protective orders in general. In fact, I agree with the plurality's statement that appellate cases—including this one—should be decided on the narrowest and best grounds. Application of that principle dictates that the analysis focus on whether an affidavit made by a deputy sheriff who claims to have effectuated personal service of a preliminary protective order issued pursuant to Code § 19.2-152.9 on appellant outside of court is "testimonial" in nature such as to trigger a constitutional right of confrontation.

The focus of such an inquiry necessarily is circumscribed by the unique character and requirements associated with *ex parte* preliminary protective orders issued pursuant to Code § 19.2-152.9. Factors pertinent to the analysis include the statutory requirement of personal service in order to effectuate a trial court's order, the purpose and effect of service of a preliminary protective order, and the warning language immediately below the deputy sheriff's signature block on the return of service suggesting that violation of the order being served could result in criminal prosecution.

A preliminary protective order is unlike most other court orders. In general, a court order is in effect when signed by the judge; it requires no other action, such as a certification from a

clerk of court that the order has been recorded in the court's files or a certification by a DMV clerk that the conviction for a traffic offense is recorded in the agency's files, to have legal effect. This is not the case for orders issued pursuant to Code § 19.2-152.9. By the express terms of the statute, the order is not in effect when it is signed by the judge, but only becomes effective if and when it is personally served by a law enforcement officer on the respondent. Code § 19.2-152.9(B) & (C).

The fact that, despite bearing a judge's signature, an order issued pursuant to Code § 19.2-152.9 is of no force and effect, and thus, a legal nullity unless and until personally served upon the respondent by a law enforcement officer is a distinction with a difference. Because it is the personal service of the order that transforms the order from legal nullity to an order that is in effect, the service requirement and the service itself is clearly substantive.

As a result, the attempts of both the plurality and the concurrence to characterize the proof of service as merely "administrative" or "ministerial" miss the mark. As even the Commonwealth conceded at oral argument, proof of service of a preliminary protective order issued pursuant to Code § 19.2-152.9 is essential to any prosecution for violating the order.[10]

---

[10] Despite the Commonwealth's concession, the plurality contends that the Commonwealth is not required to prove that appellant was served with the protective order to convict him of attempting to purchase a firearm. It bases its conclusion on the presumption of regularity in the issuance of court orders. The regularity of a standard form preliminary protective order is not before us.

The presumption of regularity in the issuance of court orders extends to actions by the court, not to actions taken by an independent actor and filed with the court. See Thompson v. Commonwealth, 27 Va. App. 620, 624 (1998) ("As a general principle, when a prior order of a court with jurisdiction to hear a matter is collaterally attacked, 'the Commonwealth is entitled to a presumption of regularity which attends the prior [judgment] because "every act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears."'" (quoting Nicely v. Commonwealth, 25 Va. App. 579, 584 (1997))).

Appellant is not challenging the authority of the court to issue the protective order. He challenges only the admission of the return of service—the recordation of the out-of-court act of service by a non-court actor necessary for the protective order to be in effect.

- 17 -

Here the return of service was the only evidence proving the protective order was served and in effect. A reasonable deputy preparing the return of service would realize the facts he recorded were "potentially relevant to later criminal prosecution" because without personal service appellant would not have been subject to a protective order and therefore would not have been bound by it. Crawford v. Commonwealth, 281 Va. 84, 98 (2011). Thus, the return of service was testimonial hearsay and inadmissible under the Confrontation Clause because the deputy did not testify.

Appellant was convicted under Code § 18.2-308.1:4 of attempting to purchase a firearm "while the [preliminary protective] order [was] in effect." Without proof of service of the protective order, appellant's conviction would lack the necessary foundation of proof, *viz.* that a preliminary protective order was in effect.

In the instant case, the Commonwealth, over appellant's objection, offered the written certification of a deputy sheriff as proof of service of the protective order. Appellant had no opportunity to confront the deputy's assertion. Without the deputy's testimony that service of the protective order was made on appellant there would have been no evidence of a protective order being in effect.

The Supreme Court of the United States has set the applicable standard. "[C]ertificates . . . [that accomplish] precisely what a witness does on direct examination" constitute testimonial statements that are subject to the confrontation rights guaranteed by the Sixth Amendment to the United States Constitution. Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310-11 (2009) (quoting Davis v. Washington, 547 U.S. 813, 830 (2006)); see also Crawford, 281 Va. at 97 (holding that hearsay evidence is "testimonial" when it is "*ex parte* in-court testimony or its functional equivalent" (quoting Crawford v. Washington, 541 U.S. 36, 51-52 (2004))). A hearsay statement is the functional equivalent of in-court testimony when, at the time the

statement was made, it was "made for the purpose of 'establish[ing] or prov[ing] past events *potentially relevant* to later criminal prosecution.'" Crawford, 281 Va. at 98 (alteration in original) (quoting Davis, 547 U.S. at 822).

A hearsay statement is testimonial when two things are true: one, the purpose of the statement is to record events; two, at the time the statement is made, a reasonable declarant would understand that the recorded events are "*potentially relevant* to later criminal prosecution." Id. Specifically, a statement is testimonial when the statement is "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."[11] Id. (quoting Crawford, 541 U.S. at 52).

In Crawford v. Commonwealth, a victim sought a preliminary protective order by swearing out an affidavit detailing her husband's abuse. During his trial for her murder, the trial court permitted the Commonwealth to admit that affidavit into evidence. The Supreme Court held the trial court erred in doing so. Although the Court noted that the "immediate purpose of the affidavit was to obtain a protective order in a civil case," the Court examined the affidavit

---

[11] It is significant that the Supreme Court stated "for use at a later trial," and not "for use at a later *criminal* trial." Although other parts of the Supreme Court's opinions have discussed use in criminal prosecutions, the Court has not been faced with a document prepared for use in civil litigation that would be relevant to a criminal prosecution. Indisputably, the record of service was prepared for use in the civil protective order proceeding.

Although hearsay rules do not define the context of Confrontation Clause rights, the federal rules of evidence have historically excluded from admissible hearsay business records those records that are prepared in anticipation of litigation, even civil litigation. See Palmer v. Hoffman, 318 U.S. 109, 114 (1943). The Court need not specifically hold that documents prepared in anticipation of civil litigation are always testimonial, nevertheless, the hearsay exception suggests that preparation for civil litigation may render a statement testimonial.

This is also consistent with the Virginia Rules of Evidence. Rule 2:803(8) excludes from the public records exception "matters observed by police officers and other law enforcement personnel when offered against a criminal defendant." The Boyd-Graves Evidence Committee noted in its commentary that this limitation exists to "avoid[] obvious Confrontation Clause problems." A Guide to Evidence in Virginia, Boyd-Graves Evidence Committee, 113 (2012 ed.). The return of service is the observation of the serving deputy, a law enforcement officer, of his own actions, raising doubts about its admissibility under Rule 2:803(8). However, as appellant abandoned his hearsay challenge on appeal, this Court need not reach that question.

and concluded it was a "'solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" Crawford, 281 Va. at 99 (quoting Melendez-Diaz, 557 U.S. at 310). Thus, it concluded that because "the facts recited were . . . 'potentially relevant to later criminal prosecution'" the affidavit was testimonial. Id. at 98 (quoting Davis, 547 U.S. at 822).

The Supreme Court's decision in Sanders v. Commonwealth, 282 Va. 154 (2011), is instructive. In Sanders, the trial court admitted testimony by the Commonwealth's medical expert that she had diagnosed the sexual assault victim with chlamydia based on the results received from a lab test. The defendant contended the lab results were testimonial hearsay. The Court disagreed. Id. at 167-68. Because a lab may need to run a chlamydia test for "any number of typically non-prosecutorial reasons," the Court noted there was no reason the lab technician would understand the lab test results to be relevant in a criminal trial. Additionally, although the medical expert had a forensic role when examining the victim, she "also provided medical diagnosis and treatment to" the victim. Id. at 166. Because the medical expert had no knowledge that the defendant had chlamydia when she ordered the victim's lab test, the Court concluded the test was ordered solely for treatment without any reason to believe the results would be used in trial.[12] Id. Thus, the evidence was non-testimonial because both the medical expert and lab technician had no reason to believe it would be used for trial.

Thus, when a statement is made for the purpose of recording an event and the recorded event reasonably could be understood by the declarant to be relevant to a later criminal prosecution, the statement is testimonial. This remains true, even if the record was not made

---

[12] The plurality asserts that the evidence in Sanders was not testimonial "despite circumstances objectively indicating the [STD laboratory test results] could be used for later criminal prosecutions." *Ante* at 10. However, the Supreme Court made no such conclusion. It found the test results were not testimonial because there was no reason to expect they would be used at a later trial. Sanders, 282 Va. at 166. Thus, the focus of the inquiry was whether a reasonable person in the declarant's position would have understood the potential use at a later trial, not whether the lab technician's purpose in creating the report was for its use in trial.

explicitly for the purpose of use in a criminal trial. The record of service of the preliminary protective order satisfies both of these conditions.

First, the very purpose of a certificate of service related to an order issued pursuant to Code § 19.2-152.9 is to establish (1) that service has occurred—i.e. recording the event of service—and (2) that the order has gone from legal nullity to a fully effective court order as a result. Although the stated statutory purpose of protective orders is "to protect the health and safety of the petitioner and family or household members of a petitioner," Code § 19.2-152.9(A), it is a mistake to attempt to separate the stated statutory purpose from the means used to effectuate that purpose: imposing additional restrictions on a respondent's conduct and subjecting him to criminal penalties for violating the order or attempting to purchase a firearm while subject to the order. As noted above, absent the personal service required by Code § 19.2-152.9(C), such an order is a nullity that has no more legal effect on a respondent than any other piece of paper. Unless and until such an order is effective, placing restrictions on a respondent's conduct and subjecting him to penalties for violating those restrictions, it cannot and does not serve the purpose of "protect[ing] the health and safety of the petitioner and family or household members of a petitioner." Code § 19.2-152.9(A). This purpose can only be achieved once the order itself is effective, i.e., once it is established that a respondent has been personally served.

Second, the deputy had ample reason to expect the record of service to be relevant in a later criminal trial. Printed on the protective order, just below the return of service, is a warning of criminal penalties for violating the order:

> Pursuant to Code of Virginia § 18.2-308.1:4, Respondent shall not purchase or transport any firearm while this order is in effect. If Respondent has a concealed handgun permit, Respondent must immediately surrender that permit to the court issuing this order. *If Respondent violates the conditions of this order, Respondent may be sentenced to jail and/or ordered to pay a fine.*

(Emphasis added).  Given that warning, and the bedrock position notice has as an essential element of due process, a reasonable deputy serving the order would understand the necessity of proving the respondent had been served with the order in any later criminal proceedings.  Cf. Melendez-Diaz, 557 U.S. at 311 ("We can safely assume that the analysts were aware of the affidavits' evidentiary purpose, since that purpose—as stated in the relevant state-law provision—was reprinted on the affidavits themselves.").

The Commonwealth argues that holding records of service for orders issued under Code § 19.2-152.9 are testimonial would inevitably lead to requiring judges and court clerks to testify regarding conviction orders in any case where a prior conviction is an element of the offense.  This is not so.

First, conviction orders are not testimonial.  An affidavit of service is a record of an extra-judicial event—service of process.  But, it is the act of service itself that is the operative event rendering a preliminary protective order effective.  The record of service merely attests that the extra-judicial event occurred.  Conviction orders are quite different.  They are not the record of the events proven at trial.  Their creation serves to finalize a conviction and conclude the trial process.  See Bright v. Commonwealth, 31 Va. App. 488, 492 (2000) ("A jury's verdict is 'not a final conviction without the entry of the sentencing order . . . .  Moreover, we have held that "'[a] guilty verdict is not a conviction until a final order of judgment has been entered.'"'" (quoting Batts v. Commonwealth, 30 Va. App. 1, 12 (1999))).  Because the purpose of the conviction order is not to record the events of trial, but to actively end the trial process, it is not testimonial.

Nevertheless, even if conviction orders were testimonial, they fall under the long-recognized exception for court records.  See Kirby v. United States, 174 U.S. 47, 54-55 (1899) (holding admission of a conviction order does not violate the Confrontation Clause when

- 22 -

admitted to prove only the existence of a prior conviction), <u>cited with approval by</u>

<u>Melendez-Diaz</u>, 557 U.S. at 314, <u>and</u> <u>Davis</u>, 547 U.S. at 825; <u>see also</u> <u>Melendez-Diaz</u>, 557 U.S.

at 322 (noting that clerk's certifications are excepted from the Confrontation Clause); <u>Dowdell v.</u>

<u>United States</u>, 221 U.S. 325 (1911) (rejecting a Confrontation Clause challenge to a judge and

clerk's statements that the defendant was present in the courtroom at a prior trial), <u>cited with</u>

<u>approval by</u> <u>Melendez-Diaz</u>, 557 U.S. at 313 n.8.  Indeed, placing conviction orders within the

court records exception fits the purpose of the Confrontation Clause itself, as a defendant had full

and ample opportunity to challenge the veracity of a conviction during the underlying trial and

appellate processes.  The same is not true for records of service related to *ex parte* orders issued

pursuant to Code § 19.2-152.9 because the individual did not have the opportunity to be present

for the court proceeding in which the judge signed the order and has no opportunity to probe the

veracity of a record of service until he is confronted with it in a subsequent court proceeding.[13]

The circumstances of this case demonstrate the crucial need for confrontation.  Even

viewed in the light most favorable to the Commonwealth, the facts in the case at bar raise

substantial questions about whether service was made.  The petitioner for the protective order

testified, without contradiction, that she was never served with the order even though the return

of service says she was.  On the face of the return, the deputy purports to have served both the

petitioner and appellant at the same time and only one minute before he filed the return with the

court.  Not only is that facially suspicious, but the petitioner for the order stated, without

contradiction, that she was not with appellant or in the court at the time of purported service.

Moreover, there is nothing in the record, other than the return itself, to contradict the statement

---

[13] As stressed throughout, these are distinctions with differences.  The analysis herein *only* applies to affidavits of service related to *ex parte* orders issued pursuant to Code § 19.2-152.9 and other affidavits of service/orders that arise from like circumstances and statutory requirements, if any there be.

appellant made to the trooper that he had not received service when he attempted to purchase a firearm. Appellant should have had the opportunity to challenge the return of service using the method "the Constitution actually prescribes: confrontation."[14] Crawford, 541 U.S. at 68-69. Appellant did not have that opportunity, and his conviction should be reversed. Accordingly, I respectfully dissent.

---

[14] The plurality states that even if the return of service were testimonial, appellant did not have the right to confront it at the time of the founding and the return was thus admissible. The Supreme Court has noted that exceptions to confrontation for testimonial hearsay are limited to "only those exceptions established at the time of the founding." Giles v. California, 554 U.S. 353, 358 (2009). To date, the Supreme Court has recognized only three such exceptions to the right to confront testimonial hearsay, none of which include returns of service. See Melendez-Diaz, 557 U.S. at 322-23 (court records); Giles, 554 U.S. at 358-59 (dying declarations and forfeiture by wrongdoing). The Commonwealth did not advance this argument, and the authorities cited by the plurality do not establish any exception beyond those recognized by the Supreme Court in Giles and Melendez-Diaz.

PUBLISHED

*VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **31st** *day of* **March, 2020**.

Quartrez Logan, s/k/a
 Quartrez Rashad Logan,                                                               Appellant,

 against                  Record No. 1735-18-1
                          Circuit Court No. CR18001398-01

Commonwealth of Virginia,                                                        Appellee.

Upon a Petition for Rehearing En Banc

Before Chief Judge Decker, Judges Humphreys, Petty, Beales, Huff, O'Brien, Russell, AtLee, Maveaux and Athey

On March 17, 2020 came the appellant, by court-appointed counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on March 3, 2020, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the petition for rehearing *en banc* is granted and the appeal of those issues is reinstated on the docket of this Court. The mandate previously entered herein is stayed pending the decision of the Court *en banc*.

The parties shall file briefs in compliance with the schedule set forth in Rule 5A:35(b). The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter. An electronic version of each brief shall be filed with the Court and served on opposing counsel. In addition, four printed copies of each brief shall be filed. It is further ordered that the appellant shall file an electronic version and four additional copies of the appendix previously filed in this case.[1]

A Copy,
     Teste:

                    Cynthia L. McCoy, Clerk

                    *original order signed by a deputy clerk of the*
          By:       *Court of Appeals of Virginia at the direction*
                    *of the Court*

                    Deputy Clerk

---

[1] The guidelines for filing electronic briefs and appendices can be found at www.courts.state.va.us/online/vaces/resources/guidelines.pdf.

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Huff and Athey
Argued at Norfolk, Virginia

PUBLISHED

QUARTREZ LOGAN, S/K/A
  QUARTREZ RASHAD LOGAN

                                                              OPINION BY
v.        Record No. 1735-18-1                    JUDGE CLIFFORD L. ATHEY, JR.
                                                              MARCH 3, 2020
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                                    David W. Lannetti, Judge

               J. Barry McCracken, Assistant Public Defender, for appellant.

               Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
               Attorney General, on brief), for appellee.


        Quartrez Logan ("Logan") was convicted in the Norfolk Circuit Court ("trial court") of

attempting to obtain a firearm while subject to a protective order, in violation of Code §§ 18.2-27

and 18.2-308.1:4.  Logan appeals the conviction, assigning as error the trial court's admission

into evidence of:

               [T]he Returns portion of the preliminary protective order . . . where
               [Logan] was denied the opportunity to confront and cross-examine
               the deputy sheriff that had completed the certificate of service
               reflecting that the extension of a protective order had been
               personally served upon [Logan] in violation of [his] right to
               confront witnesses against him as guaranteed by the Sixth and
               Fourteenth Amendments to the United States Constitution.

For the following reasons, we affirm Logan's conviction.

I. BACKGROUND[1]

On July 24, 2017, Sheila Chawlk ("Chawlk") appeared in the Civil Division of the General District Court for the City of Hampton ("Hampton GDC") seeking to extend a preliminary protective order ("PPO") against Logan to January 24, 2018. Logan did not appear at that hearing. Hampton GDC granted the extension to January 24, 2018, ordered a full hearing on January 24, 2018, and further ordered that Logan and Chawlk be served with notice of the extension and subpoenas for their appearance at the full hearing scheduled for January 24, 2018. According to the service returns sections of the PPO extension, Chawlk and Logan both received personal service of the extension and the January 24, 2018 hearing date the following day, on July 25, 2017. On July 31, 2017, Logan attempted to purchase two firearms from Superior Pawn and Guns ("Superior").

Logan was subsequently indicted for making a materially false statement on a criminal history consent form to obtain a firearm, in violation of Code § 18.2-308.2:2., and the misdemeanor charge of attempting to purchase a firearm on July 31, 2017 while being subject to a protective order, in violation of Code §§ 18.2-27 and 18.2-308.1:4.

At the trial, Michael Billingsley ("Billingsley") testified that he was working for Superior on July 31, 2017, when Logan entered the store to buy two firearms, a Ruger .38 and a Diamond Back 9mm. Billingsley advised Logan that he needed to complete two forms: a state transaction record ("SP-65") and a federal transaction record ("ATF 4473"), which Logan filled out in Billingsley's presence.

On the SP-65, Logan represented that he was not subject to a protective order. Form SP-65 directed applicants to "[s]ee Important Notice 2" on the back of the form, which advised

---

[1] Pursuant to familiar appellate principles, the evidence is summarized in the light most favorable to the Commonwealth, the prevailing party at trial. Gerald v. Commonwealth, 295 Va. 469, 472 (2018).

that it is unlawful under Code § 18.2-308.1:4 to buy any firearm while subject to a protective order. On the ATF 4473, Logan again represented that he was not subject to a protective order. The Commonwealth introduced both forms into evidence without objection.

Superior forwarded the completed forms to the Virginia State Police ("VSP") before declining to sell the firearms to Logan based upon VSP verification that Logan was, in fact, subject to a protective order.

Senior Trooper Walden ("Walden") scheduled an interview with Logan for September 18, 2017; Logan, however, did not appear. Walden tried to schedule another appointment with Logan, but Logan stated that he preferred to meet after September 27, 2017, because he had to appear in court regarding a protective order. Walden and Logan finally met on October 3, 2017.

At the meeting, Walden advised Logan of his Miranda rights—which Logan confirmed that he understood—and Logan agreed to speak with Walden. Walden asked Logan whether he remembered attempting to buy the firearms from Superior and showed Logan the forms that he completed and signed. After viewing the forms, Logan identified them as the same forms he completed and identified the signatures as his own. Walden then asked Logan, "do you remember the protective order?" Logan responded that he did remember it; however, he claimed that he thought the protective order only lasted for two days.

Walden confronted Logan with the fact that the protective order had been personally served on him six days before he tried to buy the firearms by showing him the statements in the return of service.[2] Logan claimed that he never received personal service. Logan added that he

---

[2] The statements in the return of service were on the second page (or reverse side) of the order. That page is silent on the order being an extension, but there is small print on the first page next to a box indicating that it is an extension. The print is similar to the rest of the small print on the first page, which is labeled "PRELIMINARY PROTECTIVE ORDER."

"never knew she went back and had it extended." The Commonwealth offered a certified copy of the PPO containing the service returns into evidence.

Logan objected to the admission of this document into evidence on both hearsay and Fifth Amendment grounds,[3] arguing that "information contained within the document is hearsay and [Logan] ha[d] the right to confront [the serving deputy] that created that particular content." The Commonwealth responded that the PPO had been "produced by the [c]ourt," "filed with the [c]ourt," and was "an official order of the [c]ourt." The trial court recognized the certified copy of the PPO as a "valid court record" and accepted it "as if it were the original;" accordingly, the trial court overruled Logan's objection. The trial court ruled that the exhibit was admissible under "an exception to the Hearsay Rule."[4]

At the conclusion of the bench trial, the trial court found Logan not guilty of making a materially false statement on a criminal history consent form to obtain a firearm, in violation of Code § 18.2-308.2:2, but found Logan guilty of attempting to obtain a firearm while subject to a protective order, in violation of Code §§ 18.2-27 and 18.2-308.1:4. The trial court sentenced Logan to six (6) months in jail, suspending three (3) months conditioned upon Logan's good behavior. This appeal followed.

## II. STANDARD OF REVIEW

We review whether the admission of evidence violated the right of confrontation and "whether a particular category of proffered evidence is testimonial hearsay" *de novo*, Cody v. Commonwealth, 68 Va. App. 638, 658 (2018) (quoting Holloman v. Commonwealth, 65 Va. App. 147, 170 (2015)), but "we do not substitute our judgment for that of the trial court" in

---

[3] Based on the context, counsel for Logan meant the Sixth Amendment instead of the Fifth.

[4] Logan conceded at oral argument that the statements in the return of service were admissible under this exception.

considering discretionary matters, such as witness credibility, Carter v. Commonwealth, 293 Va. 537, 543 (2017).  Regarding discretionary matters, "we consider only whether the record fairly supports the trial court's action."  Id. (quoting Grattan v. Commonwealth, 278 Va. 602, 620 (2009)).  We must "consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial."  Hairston v. Commonwealth, 67 Va. App. 552, 560 (2017).  This requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."  Parks v. Commonwealth, 221 Va. 492, 498 (1980) (emphasis and citation omitted).

III.  ANALYSIS

A.  Testimonial Statements and the Right of Confrontation

The Sixth and Fourteenth Amendments only guarantee the right to confrontation when the out-of-court statement a declarant makes against an accused is "testimonial."  Melendez-Diaz v. Massachusetts, 557 U.S. 305, 324 (2009).  "A statement intended to bear witness against the accused is testimonial."  Mooney v. Commonwealth, 297 Va. 434, 439 (2019).  If the statement is testimonial, two requirements must be satisfied to respect the right of confrontation; first, the witness must be unavailable, and second, the criminal defendant must have had a prior opportunity to cross-examine the witness.  Crawford v. Washington, 541 U.S. 36, 53-54 (2004); Dickens v. Commonwealth, 52 Va. App. 412, 418 (2008).

Logan objected that he had no opportunity to cross-examine the deputy who created the statements in the service returns portion of the PPO; accordingly, he contends that his right to confrontation was violated.  Therefore, resolving this matter turns upon whether statements in the return of service on a protective order are testimonial.  If they are, Logan's right to

confrontation was violated when the deputy was not at trial. If they are not, Logan did not have a right of confrontation.

B.  <u>Whether Service Returns are Testimonial is an Issue of First Impression in Virginia</u>

Because this is an issue of first impression in Virginia,[5] we examine controlling decisions, which have applied the primary purpose test in discerning the difference between statements that are testimonial and statements that are not testimonial. First articulated in <u>Davis v. Washington</u>, 547 U.S. 813, 822 (2006), the Court inquired whether the primary purpose of the statement was "to establish or prove past events potentially relevant to later criminal prosecution." The test has been refined case-by-case since the Court decided <u>Davis</u>.

In <u>Melendez-Diaz</u>, 557 U.S. at 321, which Logan relies upon, the Court considered whether statements examining narcotics in a certificate of analysis were testimonial. In that case, the government argued that the statements were not testimonial because a certificate of analysis is an official record. In finding them testimonial, the Court reasoned:

> Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial.

<u>Id.</u> at 324. The Court therefore acknowledged that a primary purpose of administering government affairs removes a statement from the reach of the Confrontation Clause. Although the Court explained in <u>Melendez-Diaz</u> that affidavits may fall within the "core class of 'testimonial' statements," the Court never declared that all affidavits are testimonial *per se*. <u>Id.</u>

---

[5] This Court has found in an unpublished opinion that statements in a return of service have an administrative purpose and are, therefore, not testimonial. <u>See</u> <u>Koroshev v. Commonwealth</u>, No. 1235-13-4, at *7-9, 7 (Va. Ct. App. Nov. 12, 2014) (finding that "[e]ven if the evidence had been unclear that appellant had actual notice, the December 28, 2012 order, including the JDR court's handwritten notations and the return of service completed by the deputy, is not testimonial in nature and was therefore admissible"). That opinion, however, has no precedential value. Rule 5A:1(f).

at 310. Citing affidavits and other forms of testimony as examples, the Court was explicitly concerned with "*ex parte* in-court testimony or its functional equivalent"—not labels. See id. (continuing the inquiry into the primary purpose for which the statement was created despite finding the statement an affidavit).

Applying the primary purpose test in Melendez-Diaz, the Court reasoned that those particular affidavits—certificates analyzing narcotics—were testimonial because they were made in anticipation of criminal prosecution to certify that a substance was cocaine. In fact, the Court found that "the *sole purpose* of the affidavits was to provide 'prima facie evidence of the composition, quality, and the net weight' of the analyzed substance." Id. at 311 (emphasis added; internal citation omitted). Thus, contrary to Logan's argument, the status of a statement as an affidavit is not controlling.

On brief, Logan further omitted the Court's relevant—and more recent—discussion in Michigan v. Bryant, 562 U.S. 344 (2011). In Bryant, the Court acknowledged that though the reliability of the statement does not obviate the right of confrontation, reliability under traditional hearsay rules is nonetheless relevant in determining whether a statement is testimonial. Id. at 358-60. As the Court stated, the goal of the Confrontation Clause is to ensure the reliability of evidence. Id.

In Sanders v. Commonwealth, 282 Va. 154, 165-67 (2011), the Supreme Court of Virginia applied the rationale articulated in Michigan v. Bryant, finding that statements in a medical report did not offend the rationale underlying the Confrontation Clause despite the statements serving "dual purposes," which included furthering a criminal investigation. The Sanders Court emphasized that circumstances existing at the time of the statement's creation controlled: "The fact that the Commonwealth [later] sought to use the [statements] in a criminal prosecution does not change [the medical report's] nontestimonial character." Id. at 167.

- 7 -

In fact, when a statement is not created for the primary purpose of a criminal prosecution, maintained independent of any request from a prosecutor for use of the statement at trial, and limited to memorializing non-accusatory facts, the statement is not testimonial. See id. at 165-66 (finding statements in a medical report prepared primarily for diagnostic or treatment purposes and, therefore, not testimonial despite the report also furthering potential prosecution when the doctor "work[ed] with law enforcement and other investigative agencies," received the referral from an investigative agency, and "recorded [the exams] on video . . . suggest[ing] that th[e] videos could be turned over to the Commonwealth for prosecutorial purposes"); Crawford v. Commonwealth, 281 Va. 84, 98 (2011) (finding that an affidavit seeking a protective order was subject to the Confrontation Clause because the affidavit was accusatory and described "violent, criminal acts" that relied upon the victim's memory of "past events that had taken place days, weeks, and even months previously—the very purpose of which was to 'establish or prove past events potentially relevant to later criminal prosecution'"); Walker v. Commonwealth, 281 Va. 227, 230-31 (2011) (finding statements the Commonwealth later used to prove value in a "blue book," which professionals in the automobile industry use to establish a vehicle's approximate market value, not testimonial when they were "not accusatory" and "compilers of the 'blue book' . . . did not prepare the book for the purpose of assisting the Commonwealth in securing his conviction"); Jasper v. Commonwealth, 49 Va. App. 749, 756 (2007) (finding that statements in a driving transcript from the DMV offered as evidence supporting the accused's violation of Code § 46.2-391 were not testimonial because they were maintained independent of any litigation and were neither accusatory nor did they offend the rationale underlying the Confrontation Clause).

We therefore hold that statements contained in service returns on protective orders are not testimonial. Here, the deputy did not create the statements for the primary purpose of a

criminal prosecution as the statements were maintained independent of any request from a prosecutor for the use of the statements at trial and were limited to memorializing non-accusatory facts pursuant to the deputy's ministerial duty.

The primary purpose in creating the statements was not to prove past events potentially relevant to later prosecution. The return, which indicates that service was completed along with notations of the date, manner of service, and the person served, did not document past events potentially relevant to later prosecution but were contemporaneously created in the process of serving the order.

Even if the statements did reflect past events—that is, even if the deputy failed to make the statements contemporaneously—they were not created primarily to prove past events potentially relevant to later prosecution. Instead, the statements merely documented the deputy's compliance with his statutory duty to serve the PPO.

In Crawford v. Commonwealth, which the dissent cites extensively, the Supreme Court of Virginia considered an affidavit made by a petitioner who had earlier applied to obtain a preliminary protective order against Crawford, her estranged husband. The affidavit, part of which was introduced at Crawford's trial for his later abduction, rape, and murder of her, described criminal acts already committed by Crawford that the victim used to get the preliminary protective order. The Supreme Court of Virginia found the affidavit to be testimonial in nature and, therefore, subject to the Confrontation Clause. 281 Va. at 99. However, an affidavit alleging actions of violence that are crimes in themselves and are used to obtain a protective order is clearly different from the situation in the case before us, where the form at issue is simply a return of service, which was merely an indication by a deputy sheriff that he had served notice of the protective order on Logan.

- 9 -

Code §§ 19.2-152.9(B) and 8.01-325 govern the service of the protective order at issue. Code § 19.2-152.9(B) requires the immediate personal service of the protective order on the subject of the protective order to facilitate prompt notice.[6] Effecting this service requires the server—here, a deputy—to make statements pursuant to Code § 8.01-325: "The process shall state thereon the date and manner of service and the name of the party served." No evidence suggests that at the time and date of service, a reasonable deputy could have anticipated Logan later attempting to purchase firearms and a subsequent prosecution.

A protective order only becomes effective upon service. Code § 19.2-152.9(C) states that "[t]he preliminary order is effective upon personal service on the alleged perpetrator." The primary purpose of the return of service is to show that it has been served on the subject of that protective order and is, therefore, in effect.

Thus, the statements at issue here were primarily created to comply with statutory provisions and, therefore, enable the entity to administer its affairs—a non-prosecutorial purpose. Furthermore, the statements do not offend the rationale underlying the Confrontation Clause when they were not accusatory and were maintained independent of any request from a prosecutor for the use of the statements at a trial. A sworn officer performing a ministerial duty created the statements on the document, which was maintained by a court in the performance of its official duties.

Because the statements were, therefore, not created primarily to prove past events potentially relevant to later prosecution, the challenged statements were not testimonial.

---

[6] Code § 19.2-152.9(B) requires the entering court to communicate the subject's identifying information "forthwith" to law enforcement officers, who must similarly serve the subject "forthwith" and personally after forwarding the information to the Virginia Criminal Information Network ("VCIN"), which further disseminates the subject's information.

Accordingly, Logan had no right to confront the deputy who made them, and the trial court did not err in admitting the challenged statements into evidence.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

<u>Affirmed.</u>

Huff, J., dissenting,

A preliminary protective order is not effective until service has been made. Code § 19.2-152.9(C). Accordingly, proof of service of a preliminary protective order is required before one can be convicted of violating it. Here the return of service was the only evidence addressing the statutory requirement of service and the due process requirement of notice. A reasonable deputy preparing the return of service would realize the facts he recorded were "potentially relevant to later criminal prosecution." Crawford v. Commonwealth, 281 Va. 84, 98 (2011). Thus, the return of service was testimonial hearsay and inadmissible under the Confrontation Clause because the deputy did not testify. Therefore, I respectfully dissent.

Appellant was convicted under Code §§ 18.2-27 and 18.2-308.1:4 of attempting to purchase a firearm "while the [preliminary protective] order [was] in effect." Without proof of service of the protective order, appellant's conviction would lack the necessary foundation of proof, *viz*. that a preliminary protective order was in effect.

In the instant case, the Commonwealth, over appellant's objection, offered the written certification of a deputy sheriff as proof of service of the protective order. Appellant had no opportunity to confront the deputy's assertion. Without the deputy's testimony that service of the protective order was made on appellant there would have been no evidence of a protective order being in effect. The most fundamental principles of due process require notice of the existence of a court order before one can be convicted of violating the order. Tsai v. Commonwealth, 51 Va. App. 649, 654 (2008); see also Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 313 (1950) ("Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice . . . .").

The Supreme Court of the United States has set the applicable standard. "[C]ertificates . . . [that accomplish] precisely what a witness does on direct examination" constitute testimonial statements that are subject to the confrontation rights guaranteed by the Sixth Amendment to the United States Constitution. Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310-11 (2009) (quoting Davis v. Washington, 547 U.S. 813, 830 (2006)); see also Crawford, 281 Va. at 97 (holding that hearsay evidence is "testimonial" when it is "*ex parte* in-court testimony or its functional equivalent" (quoting Crawford v. Washington, 541 U.S. 36, 51 (2004))). A hearsay statement is the functional equivalent of in-court testimony when, at the time the statement was made, it was "made for the purpose of 'establish[ing] or prov[ing] past events *potentially relevant* to later criminal prosecution.'" Crawford, 281 Va. at 98 (alteration in original) (quoting Davis, 547 U.S. at 822).

A hearsay statement is testimonial when two things are true: One, the purpose of the statement is to record events. Two, at the time the statement is made, a reasonable declarant would understand that the recorded events are "*potentially relevant* to later criminal prosecution." Id. Specifically, a statement is testimonial when the statement is "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. (quoting Crawford, 541 U.S. at 52).

In Crawford v. Commonwealth, a victim sought a preliminary protective order by swearing out an affidavit detailing her husband's abuse. During his trial for her murder, the trial court permitted the Commonwealth to admit that affidavit into evidence. The Supreme Court held the trial court erred in doing so. Although the Court noted that the "immediate purpose of the affidavit was to obtain a protective order in a civil case," the Court examined the affidavit and concluded it was a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." Id. at 99 (quoting Melendez-Diaz, 557 U.S. at 310). Thus, it concluded

- 13 -

that because "the facts recited were . . . 'potentially relevant to later criminal prosecution'" the affidavit was testimonial. Id. at 98-99 (quoting Davis, 547 U.S. at 822).

The Supreme Court's decision in Sanders v. Commonwealth, 282 Va. 154 (2011), is instructive. In Sanders, the trial court admitted testimony by the Commonwealth's medical expert that she had diagnosed the sexual assault victim with chlamydia based on the results received from a lab test. The defendant contended the lab results were testimonial hearsay. The Court disagreed. Id. at 167-68. Because a lab may need to run a chlamydia test for "any number of typically non-prosecutorial reasons," the Court noted there was no reason the lab technician would understand the lab test results to be relevant in a criminal trial. Additionally, although the medical expert had a forensic role when examining the victim, she "also provided medical diagnosis and treatment to" the victim. Id. at 166. Because the medical expert had no knowledge that the defendant had chlamydia when she ordered the victim's lab test, the Court concluded the test was ordered solely for treatment without any reason to believe the results would be used in trial. Id. Thus, the evidence was non-testimonial because both the medical expert and lab technician had no reason to believe it would be used for trial.

Thus, when a statement is made for the purpose of recording an event and the recorded event reasonably could be understood by the declarant to be relevant to a later criminal prosecution, the statement is testimonial. This remains true, even if the record was not made explicitly for the purpose of use in a criminal trial. The record of service of the preliminary protective order satisfies both of these conditions.

First, the very purpose of a certificate of service is to establish that service has occurred—i.e. recording the event of service—and, therefore, satisfying the notice requirement of due process in both the civil protective order proceeding and any later proceedings for

violating the order.  See Tsai, 51 Va. App. at 654 (explaining due process is satisfied by actual notice).

Second, the deputy had ample reason to expect the record of service to be relevant in a later criminal trial.  Printed on the protective order, just below the return of service, is a warning of criminal penalties for violating the order:

> Pursuant to Code of Virginia § 18.2-308.1:4, Respondent shall not purchase or transport any firearm while this order is in effect.  If Respondent has a concealed handgun permit, Respondent must immediately surrender that permit to the court issuing this order.  *If Respondent violates the conditions of this order, Respondent may be sentenced to jail and/or ordered to pay a fine.*

(Emphasis added).  Given that warning, and the bedrock position notice has as an essential element of due process, a reasonable deputy serving the order would understand the necessity of proving the respondent had been served with the order in any later criminal proceedings.  Cf. Melendez-Diaz, 557 U.S. at 311 ("We can safely assume that the analysts were aware of the affidavits' evidentiary purpose, since that purpose—as stated in the relevant state-law provision—was reprinted on the affidavits themselves.").

The circumstances of this case demonstrate the crucial need for confrontation.  Even viewed in the light most favorable to the Commonwealth, the facts in the case at bar raise substantial question about whether service was made.  The petitioner for the protective order testified, without contradiction, that she was never served with the order even though the return of service says she was.  On the face of the return, the deputy purports to have served both the petitioner and appellant at the same time and only one minute before he filed the return with the court.  Not only is that facially suspicious, but the petitioner for the order stated, without contradiction, that she was not with appellant or in the court at the time of purported service. Moreover, there is nothing in the record, other than the return itself, to contradict the statement appellant made to the trooper that he had not received service when he attempted to purchase a

- 15 -

firearm.  Appellant should have had the opportunity to challenge the return of service using the method "the Constitution actually prescribes: confrontation."  Crawford, 541 U.S. at 68-69.  Appellant did not have that opportunity, and his conviction should be reversed.  Therefore, I respectfully dissent.